UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APRIL GALLOP, for Herself and as Mother
and Next Friend of ELISHA GALLOP, a Minor,   No. 08-CV-10881-DC

                        Plaintiff,   **PLAINTIFFS' SUR-REPLY
                                                              re: MOTION TO DISMISS**

      vs.


DICK CHENEY, Vice President of the U.S.A.,
DONALD RUMSFELD, former U.S. Secretary
of Defense, General RICHARD MYERS, U.S.A.F.
(Ret.), and John Does Nos. 1– X, all in their
individual capacities,

                        Defendants.

---

Plaintiff April Gallop, where the defense has introduced a new claim in its Reply on the pending motion to dismiss and Court has allowed it,[1] submits a sur-reply on the point, as follows:

                                                         I.

Defendants' new assertion is that the constitutional claims of plaintiff April Gallop are barred by the doctrine of intramilitary immunity, under the rule of *Feres v. United States* 340 U.S. 135 (1950), as expanded by subsequent decisions to include prohibition of a *Bivens* action for a constitutional violation, if it occurs in the course of activity "incident to military service". (See Reply, p.7-8, and citations.) *Feres* barred

---

[1]  Defendants acknowledge that introducing new matter in a Reply is normally forbidden, but argue that the Court still has discretion to consider it; and they agree that some response by way of a Sur-reply from plaintiffs is proper. See dfts' Reply, p.7, n.5. The Court gave permission in its Order of 8/14/09.

1

actions by claimants who, "while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces", *Feres v. United States*, 340 U.S. 135, 138 (1950). Here, in point of fact, Ms. Gallop <u>was</u> on furlough at the time of the attack, having not yet formally returned from her maternity leave. More to the point, her injuries definitely did not arise from any form of negligence by the defendants, but, rather, a deliberate, horrible plot, in which the military office of some defendants (as yet unidentified, except for Gen. Myers) was subverted, and indeed perverted beyond measure, in furtherance of a political conspiracy.[2]

Leaving aside the overarching issue of whether an immunity of any kind can rightly be applied to shield the murderous and essentially treasonous conduct alleged here by plaintiffs, defendants' new claim raises an issue of fact and law not susceptible to the peremptory judgment they seek. The question, obviously—with renewed apologies for difficulties in 'the (un-)willing suspension of dis-belief', and skepticism, needed to impartially evaluate the merits of plaintiffs' extreme claims—is the nature of the defendants' alleged wrongful activities, taken as true; and whether, in response to the immunity claim, they can be fairly adjudged "incident to military service"?

The Supreme Court has "explicated the basis for its holding in *Feres* for barring claims by members of the armed forces of the United States as follows: 'The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort

---

[2] It should be noted that defendant Cheney was not a member of the armed forces, and therefore the immunity does not apply to him at all; and Rumsfeld was also a civilian, strictly speaking, and indeed the embodiment of <u>civilian</u> authority, outside of and over against the military. So plaintiff maintains that, in law, Gen. Myers is the only one who can even claim the immunity under *Feres*. Defendants ignore this issue.

Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character.'" *McGowan v. Scoggins*, 890 F.2d 128, 134 (9th Cir. 1989), citing *United States v. Brown*, 348 U.S. 110 (1954). The rationale was extended also to prohibit *Bivens* actions between service members, and Justice Scalia made clear in that holding, in *United States v. Stanley*, 483 U.S. 669, 68? (1987), that the test is whether the defendants' alleged actions were "incident to military service"; whatever that is taken to mean in a given case, or to include, depending on particular facts.

In its long, scholarly opinion in *MacGowan*, the Ninth Circuit observed that, the year before the *Feres* decision, in *Brooks v. United States,* 337 U.S. 49, 52, 69 S.Ct. 918, 920 (1949), the Supreme Court

> held that an action may be brought against the Government or governmental employees by or on behalf of a member of the armed forces of the United States for injuries that do not arise out of or in the course of military service. *Id.* at 52, 69 S.Ct. at 920. We applied *Brooks* in *Mills v. Tucker,* 499 F.2d 866 (9th Cir.1974) and *Johnson v. United States,* 704 F.2d 1431 (9th Cir.1983). In *Mills,* a member of the United States Navy was killed in a traffic collision on a roadway maintained by the United States Navy adjacent to but not a part of the West Loch Naval Ammunition Depot. *Mills,* 499 F.2d at 867. Mills was stationed at Hickam Air Force Base. Mills' widow sued the Government for negligently maintaining the road. In a bench trial, the court found the Government liable. *Id.*
> On appeal, the Government argued it was immune under the *Feres* decision because Mills' injuries arose out of or in the course of activity incident to service. *Id.* We held that Mills' injuries were not incident to his military service. *Id.* We noted that Mills was on furlough on the date of his injury. He was returning to his Navy owned quarters from a "moonlighting" civilian job. *Id.* We concluded that "[h]e was thus *in the same situation as the serviceman in Brooks—only in the remotest sense subject to military discipline. Id.*

*McGowan v. Scoggins*, 890 F.2d at 134 (Emphasis added).

3

The non-immune character of deliberate wrongdoing is also the point of the Ninth Circuit decision in *Lutz v. Secretary of the Air Force*, 944 F.2d 1477 (9th Cir. 1991). There, defendant members of the Air Force entered their commanding officer's office after hours and took personal material from her computer, which they circulated to others in an effort to smear and discredit her. The Court rejected arguments to the effect that immunity applied simply because the acts took place in a military setting, holding that "Intentional tortious and unconstitutional acts directed by one servicemember against another *which further no conceivable military purpose* and are not perpetrated during the course of a military activity surely are past the reach of *Feres*." *Id*. 944 F.2d at 1487 (emphasis added).

Similarly, in *Durant v. Neneman*, 884 F.2d 1350 (10th Cir. 1989) *cert. denied sub nom Neneman v. Tassin,* 493 U.S. 1024, 110 S.Ct. 728 (1990), cited with approval by the Court in *Lutz*, the Court brushed by inconsequential military connections, and focused on the nature of the acts involved. "[O]ur evolving jurisprudence", the Court said, "has created a zone of protection for military actors, immunizing actions and decisions which involved military authority from scrutiny by civilian courts. It is our conclusion, however, that *this zone was never intended to protect the personal acts of an individual when those acts in no way implicate the function or authority of the military*. We can find nothing that would dictate a contrary conclusion. *Durant*, 884 F.2d at 1353 (Emphasis added). As in *Lutz*, the Court in *Durant* also relied on *Brown v. United States*:

> We find most helpful the reasoning of the Eighth Circuit in *Brown v. United States*, 739 F.2d 362 (8th Cir.1984), *cert. denied*, 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985). In deciding whether intra-military immunity would be granted to certain defendants, the court focused upon the nature of the defendants' conduct.

4

> In *Brown*, plaintiff's son, a black soldier, was subjected to a mock lynching by several noncommissioned officers while he attended an off-duty party. Plaintiff sued the United States, the soldiers who participated in the lynching episode, and the commanding officer for civil rights violations. While upholding the dismissal of the action against the United States and the commanding officer on *Feres* grounds, the court held the individual soldiers subject to suit. The court determined the most appropriate aspect of liability is the "military purpose or mission" of those acts. *Brown*, 739 F.2d at 368. Looking at the actions of the defendant noncommissioned officers, the court stated: "The activity that is at issue in this claim is of a distinctly non-military nature: the alleged participation of a group of men at a holiday weekend drinking party in the mock lynching of a young black man." *Brown*, 739 F.2d at 369. In taking this focus, the court recognized neither the institution of the military itself nor the exercise of command authority was implicated in the defendants' alleged actions. Thus, immunity was not required. We endorse this view.
>
> While civilian courts have a legitimate concern for protecting the harmony of the military establishment to prevent an erosion of discipline, we do not believe this concern should be extended to claims that arise outside the military function. When a soldier commits an act that would, in civilian life, make him liable to another, he should not be allowed to escape responsibility for his act *just because those involved were wearing military uniforms at the time of the act*. When military personnel are engaged in distinctly nonmilitary acts, they are acting, in effect, as civilians and should be subject to civil authority.

*Durant*, 884 F.2d at 1354 (Emphasis in original). Just so.

Finally, it is important to note that an immunity award in these circumstances—assuming it would be held to extend also to her claims under federal common law[3]—would threaten to leave Ms. Gallop with no remedy for the injuries and deprivations she alleges. See *Bell v. Hood* 327 U.S. 648 (1946) (No right without a remedy). Certainly any possible veteran's benefits under Title 38 of the Code would be inappropriate, and inadequate in any case; and a complaint of maltreatment by a superior—under Article 138 of the Code of Military Justice (10 U.S.C.A. 938), requiring referral to the officer

---

[3] Defendants' pleadings have made no mention of the Common Law claim in Count Two of plaintiffs' complaint, but we assume they intend their claim of intramilitary immunity to include it also, and that, if it lies at all, the Court would so extend it…

5

with "court-martial jurisdiction" over the (offenders), who enjoy the very highest rank—would be similarly unavailing. We say again that this Complaint, with its 'extreme' allegations against the highest officials, is *sui generis*, and must be dealt with as such.

## II.

In that respect, plaintiff can readily acknowledge that her claims obviously do involve the military, *per se*, being founded on a <u>default</u> of military action, when it was most needed—and specifically a culpable, dastardly failure of the Pentagon defenses, arranged by lawless conspiracy among military and other officials and operatives. Such a treacherous "false flag" operation is a tactic of war, and so obviously has a military character; but it is clearly beyond any reasonable concept of legitimate military service, or function or discipline, cognizable by the Law as something deserving the strong protection of immunity. It was only part of what was done and not done in furtherance of the plot, in any case, where the plot as a whole quite likely involved a substantial quantity of purely civilian activity—such as, e.g, "contractors" rigging pre-set explosive charges for remote detonation, or government agents immediately confiscating tapes from surveillance cameras around the Pentagon—in substantial and crucial phases of the operation. But the point is that the plot as a whole, with its heinous purpose and the misappropriation of authority to carry it out, is patently outside of, and indeed a negation of, any fair conception of the "military function" held to be entitled to deference from civil authority by the rule of *Feres*. In such unprecedented circumstances, being so deeply antagonistic to the military function properly known to the Law, it must be held beyond the immunity's reach.

Further, there is certainly a grand distance, and a factual 'disconnect' in terms of "military service" fairly so-called, between Gen. Myers and cohorts in the Air Force command who plotted with him and the others in and around that day, and Ms. Gallop, an Army enlisted woman doing financial services administrative work in the bottom of the Pentagon, who was apparently a random victim—collateral damage—in the terrible attack. This factor further bespeaks a crucial "remoteness" of the event and its effects on her from real military service—and from those concerns about its integrity and autonomy which form the rationale for the court-made law of *Feres*, and *Stanley*, shielding it from civil authority—which is of a piece with that found in the Ninth Circuit cases discussed above, where immunity was denied.

In these circumstances—given the practical reality that the case would subsist in full on the claims of Elisha Gallop, the minor, regardless of an intramilitary immunity award against his mother at the pleading stage—the plaintiff argues that (as with the Statute of Limitations claim against her) the appropriateness of any immunity award here, at best, turns on substantive factual issues that remain to be explored, and would be explored and might then be made the basis of an informed decision. Morally, of course, no immunity of any kind (where three types of it are demanded by defendants, plus Limitations relief) should be available in such aggravated circumstances; so the Court should be encouraged to withhold such relief until its proper minimal ambit, if any, is clear in the evidence, and only then, if anything, make the narrowest possible grant.[4]

---

[4]  "The entreaties of public officials for immunity for their official wrongdoing… should be treated with circumspection. *Grow v. Fisher*, 523 F.2d 875 (7th Cir. 1975). We should be hesitant to expand the scope of official activity which, from the perspective of a victim seeking civil redress, stands beyond the constraints of the Constitution. See

III.

The plaintiffs' case is not against the government—despite its presence as the bulwark of the defense—but against individuals who evidently suborned government (and military) authority to betray the country. These were acts with no legitimate military purpose. They do not legitimately implicate 'the institution of the military itself' or the 'exercise of command authority', or subject them, as such, to untoward judicial scrutiny; nor would such scrutiny here betray the civilian courts' "legitimate concern for protecting the harmony of the military establishment to prevent an erosion of discipline…" That concern is not to be "extended to claims that arise outside the military function", and should not be available here. The servicemember defendants clearly were "acting, in effect, as civilians and should be subject to civilian authority", including that of this honorable Constitutional Court.

WHEREFORE, the plaintiffs respectfully ask again that the Court convene a live hearing on the merits of defendants' motion, including the new immunity claim, before any decision to dismiss the case; that it reject the new immunity claim, deny the motion

///

---

generally, *Butz v. Economou*, 438 U.S. 478…(1978)." *Hampton v Hanrahan*, 600 F.2d 600, 631 (7th Cir. 1979), *rev'd in part on other grounds,* 446 U.S. 754 (1980).

to dismiss in all respects, and certify that an appeal from denial of qualified immunity would be frivolous; and that it grant such other and further relief as may be just and appropriate in the premises.

|  |  |
|---|---|
|  | Yours, etc., |
| DATED: August 17, 2009. | _____/s/_____ |
|  | Dennis Cunningham |
|  | 115-A Bartlett Street |
|  | San Francisco, CA 94110 |
|  | 415-285-8091 |
|  | denniscunninghamlaw@gmail.com |
|  |  |
|  | William W. Veale |
|  | 2033 North Main Street, #1060 |
|  | Walnut Creek, CA 94596 |
|  | 925-935-3987 |
|  | centerfor911justice@gmail.com |
|  |  |
|  | Mustapha Ndanusa |
|  | 26 Court Street |
|  | Brooklyn, NY 11201 |
|  | 718-825-7719 |
|  | mndanusa@gmail.com |

.