UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

APRIL GALLOP, for Herself and as        :
Mother and Next Friend Of
ELISHA GALLOP, a Minor,                 :

                    Plaintiff,          :

            - against -                 :

DICK CHENEY, Vice President of          :
the U.S.A., DONALD RUMSFELD,
former U.S. Secretary of Defense,       :
General RICHARD MYERS, U.S.A.F.
(Ret.), and JOHN DOES Nos. I-X,         :
all in their individual
capacities,                             :

                    Defendants.         :

- - - - - - - - - - - - - - - - - -x

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED: 3/15/10         │
└─────────────────────────────┘
```

**MEMORANDUM DECISION**

08 Civ. 10881 (DC)

**APPEARANCES:**        (See last page)

**CHIN, District Judge**

        On September 11, 2001, four commercial airliners were
hijacked in the northeastern United States.  Two crashed into the
World Trade Center towers in New York; a third crashed into the
Pentagon in Washington, D.C.; and the fourth crashed in rural
Pennsylvania, apparently as it was en route to the White House or
the Capitol.

        In this case, plaintiff April Gallop, represented by
counsel, contends that officials of the United States government
aided in the attacks.  Indeed, she sues former Vice President
Dick Cheney, former Secretary of Defense Donald Rumsfeld, and
former Acting Chairman of the Joint Chiefs of Staff Richard Myers
individually, claiming that they and other government officials

conspired "to facilitate and enable the hijacking of the
airliners" for use as "living bombs to attack buildings
containing thousands of innocent victims." (Compl. ¶ 1).  Gallop
further alleges that defendants then conspired "to cover up the
truth about what they had done."  (Id.).

　　　　Before the Court is defendants' motion to dismiss the
complaint for failure to state a claim upon which relief may be
granted.  Because I conclude that the complaint fails to allege a
plausible claim for relief, defendants' motion is granted and the
complaint is dismissed.

**STATEMENT OF THE CASE**

A.    **The Facts**

　　　　The complaint alleges the following:

　　　　At all relevant times, Gallop was a career member of
the U.S. Army who was stationed at the Pentagon on September 11,
2001.  (Id. ¶¶ 6, 10).  That day was Gallop's first day back at
work from maternity leave, and she had her two-month old baby,
Elisha, with her at the Pentagon.  (Id. ¶¶ 6, 10).  As she sat
down to work, "there was an explosion, then another; walls
collapsed and the ceiling fell in."  (Id. ¶ 6).  Both Gallop and
her baby were hit by debris and suffered head and brain injuries.
(Id. ¶¶ 6, 7, 10, 57-59).  Gallop grabbed her baby, and they
managed to escape through an opening in the wall.  (Id. ¶ 6).

　　　　In fact, Gallop alleges, no plane crashed into the
Pentagon.  (Id. ¶ 4).  Instead, she contends, the "explosion and
fireball were engineered by other means, a planted bomb or bombs

-2-

and/or a missile." (Id.). The "official" reports of a hijacked
plane crashing into the Pentagon were "false," and were issued to
further defendants' unlawful conspiracy. (Id. ¶ 4).

Gallop seems to acknowledge that two planes crashed
into the World Trade Center towers in New York and a third
crashed in Pennsylvania. (Id. ¶ 14 ("Two [planes] were evidently
crashed into the World Trade Center towers in New York, which
later collapsed; . . . and the fourth [plane], supposedly aiming
for the White House or the Capitol, was reported crashed in
Pennsylvania by its passengers, fighting back against the
hijackers.")). But Gallop contends that defendants and other
U.S. government officials aided and facilitated the attacks:

> to bring about an unprecedented, horrifying
> and frightening catastrophe of terrorism
> inside the United States, which would give
> rise to a powerful reaction of fear and anger
> in the public, and in Washington. This would
> generate a political atmosphere of acceptance
> in which the new Administration could enact
> and implement radical changes in the policy
> and practice of constitutional government in
> our country. . . . By helping the attack
> succeed, defendants and their cohorts created
> a basis for the seizure of extraordinary
> power, and a pretext for launching the so-
> called Global War on Terror, in the guise of
> which they were free to pursue plans for
> military conquest, "full spectrum dominance"
> and "American primacy" around the world; as
> they have done.

(Id. ¶ 2).

Gallop alleges the following in support of her
conspiracy theory:

- defendants and other U.S. government officials
  ignored "an increasingly explicit series of

-3-

warnings" of planned Al Qaeda attacks inside the United States (<u>id.</u> ¶ 17);

- "[r]esponsible intelligence officials" ignored "critical investigative leads" (<u>id.</u> ¶ 18);

- "the many warnings of a coming attack by Al Qaeda forces (as many as forty messages in all, according to the [9/11] Commission Report, from eleven different countries) were studiously ignored" (<u>id.</u> ¶ 19);

- "defendants and others in the highest circles of Government" did not respond (<u>id.</u> ¶ 20);

- the U.S. air defense system failed to respond to the early reports of the hijackings (<u>id.</u> ¶¶ 22-26);

- Gallop was present at the Pentagon and saw no sign of a plane or any wreckage of or from a plane (<u>id.</u> ¶ 33);

- it was unlikely if not "nearly impossible" for a plane of this size to have maneuvered as this plane reportedly did, i.e., to have smashed into a side wall of the Pentagon rather than straight down into the top of the building (<u>id.</u> ¶¶ 37-40);

- there are no photographs or video of plane, either before or after the crash, from surveillance cameras (<u>id.</u> ¶¶ 40(a), (b));

- an odor of cordite, a high explosive used in gunpowder, was detected at the Pentagon in the aftermath, which is suggestive of explosives rather than a fire from burning jet fuel (<u>id.</u> ¶ 40(f));

- on September 10, 2001, the day before, Rumsfeld acknowledged that $2.3 trillion in defense funds could not be accounted for; to plaintiff's knowledge and belief, the bombing at the Pentagon destroyed records relevant to the tracing of those funds (<u>id.</u> ¶ 42);

- "the plainly visible pattern of damage on the outside and in the other photographic views makes it clear the building was not hit by a plane" (<u>id.</u> ¶ 43);

- there was time for the U.S. to send jets to intercept the two planes that hit the towers in New York, but this was not done (id. ¶ 47);

- the reports of what occurred on Flight 93, which crashed in Pennsylvania were false, because "the science is clear that, at least in 2001, cell phones couldn't operate at the high altitude where the struggle supposedly took place" (id. ¶ 48); and

- the reports of debris from the plane in Pennsylvania a mile or more from the crash are "an obvious impossibility," and the photographs of the crash site do not reveal visible debris or any sign of the plane (id. ¶ 50).

The true facts of what happened on September 11, 2001, Gallop alleges, were covered up by defendants and other U.S. government officials. (Id. ¶¶ 51-56).

## B.    **Procedural History**

This action was commenced on December 15, 2008. The complaint asserts three causes of action: (1) a claim pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), for violation of the constitutional rights of Gallop and her child; (2) a claim for common law conspiracy to cause death and great bodily harm; and (3) a claim under the Antiterrorism Act, 18 U.S.C. § 2333(a), which provides civil remedies, including treble damages and attorneys' fees, to U.S. nationals injured by "an act of international terrorism." 18 U.S.C. § 2333(a). The complaint seeks compensatory and punitive damages against defendants personally, on a joint and several basis, "in such amounts as the Jury may see fit to award," as well as treble damages and attorneys' fees and costs. (Compl. at 27).

-5-

The Court conducted a pretrial conference on April 8,
2009, and three lawyers appeared for Gallop.  Defendants were
represented by the United States Attorney's Office for the
Southern District of New York.  One of Gallop's attorneys
described her claims:

> We allege that this was a wide-ranging
> enormous conspiracy by members of the
> government, and we picked three principals,
> Donald Rumsfeld, Dick Cheney, and General
> Richard Myers, and have alleged that they
> conspired to facilitate the attack in
> essence.

(4/8/09 Tr. 2).  Counsel suggested that the World Trade Center
towers were blown up by explosives <u>after</u> they were hit by
airplanes.  (<u>Id.</u> 2, 4).  Counsel suggested that a plane flew
toward and over -- but not into -- the Pentagon and then some
explosives inside the Pentagon were set off.  (<u>Id.</u> 3).  After the
Court inquired as to the good faith basis for bringing the law
suit, the following exchange between the Court and counsel
ensued:

> THE COURT:  So I am clear, you are asserting
> that Cheney, Rumsfeld, Myers were personally
> involved in some kind of plot to blow up the
> World Trade Center and the Pentagon.
>
> MR. VEALE:  That's correct.
>
> THE COURT:  That's the allegation.
>
> MR. CUNNINGHAM:  I think we might back a
> little away from that in the sense that we do
> believe they were involved in a plot that
> allowed the planes to get to the World Trade
> Center and to the Pentagon, in other words --
>
> THE COURT:  Meaning they knew it was going to
> happen and they did nothing to stop it and
> knowingly let it go forward.

-6-

> MR. CUNNINGHAM:  Yes, and interfered in such
> a way to keep the normal operation of the
> interceptor fighter plane system from
> happening; they cut off those planes.  Then
> the issue of the bombing in either place is a
> little more problematic, but still that's
> what we have come to believe.

(Id. 4-5).

Defendants expressed their intent to file a motion to dismiss the complaint, a briefing schedule was set, and this motion followed.  In her opposition, Gallop submitted several affidavits and affirmations, and submitted numerous references to books about and studies of the attacks of September 11, 2001.

### DISCUSSION

Defendants move to dismiss the complaint on several grounds:  Gallop has not sufficiently alleged constitutional violations; defendants are entitled to qualified immunity; the Anti-Terrorism Act claim fails to state a claim upon which relief may be granted; Gallop's claims are barred by the doctrine of judicial estoppel; the constitutional claims are untimely; and the complaint is frivolous.  I reach only the last prong of the motion:  I agree that the complaint is frivolous.  Hence, the motion is granted and the complaint is dismissed, with prejudice.

### A.    Applicable Law

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  The

Supreme Court in Iqbal set out a "two-pronged" approach for courts considering a Rule 12(b)(6) motion to dismiss. Id. at 1950.

First, the court accepts plaintiff's factual allegations as true and draws all reasonable inferences in his favor. See id. The court considers only the factual allegations in the complaint and "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).[1] Legal conclusions "must be supported by factual allegations." Iqbal, 129 S. Ct. at 1950. Pleadings that are "no more than conclusions are not entitled to the assumption of truth," and a court need assume the veracity only of "well-pleaded factual allegations." Id.

Second, the court determines whether the "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S.

---

[1]    Here, I do not consider the affidavits and affirmations submitted by plaintiff in opposition to the motion, as they are not properly considered as part of the complaint.

at 556).  Facts that are "merely consistent with" a defendant's
liability are insufficient if they do not establish the
"plausibility of 'entitlement to relief.'"  (Id. (quoting
Twombly, 550 U.S. at 557).  Determining plausibility is a
"context-specific task that requires the reviewing court to draw
on its judicial experience and common sense."  Id. at 1950.

        In Iqbal, the complaint alleged that following the
attacks of September 11, 2001, high-ranking federal officials
(the Attorney General and the Director of the FBI) directed the
FBI to label thousands of Arab Muslim men as "high interest" and
then to arrest and detain them -- for invidious and
discriminatory reasons, i.e., their race, religion, or national
origin.  Id. at 1951-52.  The Court held that "purposeful,
invidious discrimination" was not a "plausible conclusion" in
light of an "obvious alternative explanation" for the arrests:
the high-ranking federal officials acted based on their
"nondiscriminatory intent to detain aliens who were illegally
present in the United States and who had potential connections to
those who committed terrorist acts."  Id. at 1951-52.  In other
words, the Court rejected Iqbal's proffered explanation for the
defendants' actions, finding it implausible when compared to a
more compelling -- and "obvious" -- alternative explanation.

**B.    Application**

        First, I consider the factual content of the complaint,
keeping in mind that I am obliged to assume the veracity only of
well-pleaded factual allegations, and that mere conclusions are

-9-

not entitled to the assumption of truth.  Second, I consider
whether the well-pleaded facts, assumed to be true, give rise not
just to a possible claim but to a plausible claim.  In these
analyses, I am required to draw on my judicial experience and to
apply my common sense.

### 1.   **Factual Content of the Complaint**

The complaint pleads little in terms of factual content
beyond what Gallop saw and experienced herself at the Pentagon on
September 11th.  She did not see any signs of a plane, but this
is hardly compelling evidence that no plane was there, given her
description of the chaos around her -- a "huge explosion,"
followed by more explosions, walls collapsing, ceilings falling,
flames shooting out of her computer, debris falling on her and
her baby, smoke and dust all about, and the front of the building
being blown open.  (Compl. ¶¶ 6, 7, 33, 34).  Indeed, she alleges
that she collapsed outside and did not wake up until some time
later when she found herself in a hospital.  (Id. ¶ 34).  Under
these circumstances, the fact that she did not see any sign of a
plane, assuming that to be true, does not mean no plane hit the
Pentagon.[2]

Certain other allegations are arguably factual in
nature.  Gallop alleges that government officials missed warnings

---

[2]      It should be noted that in a prior lawsuit, Gallop took
the position that a passenger airliner did crash into the
Pentagon.  (See McShain Decl., Ex. B ¶ 2 (Amended Complaint,
dated Mar. 23, 2005, filed in Vadhan v. Riggs Nat'l Corp., No. 04
Civ. 7281 (RCC))).

that Al Qaeda was going to attack and that fighter jets had
sufficient time to intercept the hijacked airplanes but failed to
do so.  I will assume, for purposes of this motion, that these
factual allegations are true; after all, four commercial
jetliners were hijacked and three of the four attacks succeeded.
Beyond these facts, however, the complaint contains little more
than speculation and conjecture.  The allegations that high-
ranking officials of the United States knew that the attacks were
coming and that they facilitated the attacks and let them happen,
knowing that thousands of civilians would die, to create an
atmosphere of fear that would permit the administration to seize
extraordinary power and start a pretextual global war on terror
are not factual in nature.  Rather, they are mere conclusions,
unsupported by any specific factual assertion.  Accordingly, the
Court is not required, under Iqbal, to assume their truth.

##    2.    **Plausibility of Plaintiff's Claims**

          Even assuming the factual allegations of the complaint
are true, Gallop's claims are not plausible.  It is simply not
plausible that the Vice President of the United States, the
Secretary of Defense, and other high-ranking officials conspired
to facilitate terrorist attacks that would result in the deaths
of thousands of Americans.  If anything, the allegations are the
product of cynical delusion and fantasy.

          A court may dismiss a claim as "factually frivolous" if
the facts alleged are "clearly baseless," that is, "fanciful,"
"fantastic," or "delusional."  Denton v. Hernandez, 504 U.S. 25,

32-33 (1992) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 325,
327, 328 (1989)). Courts have not hesitated to dismiss
complaints asserting delusional claims of conspiracy.[3] Indeed,
courts have dismissed other cases alleging delusional conspiracy
theories about the attacks of September 11, 2001.[4] Because

---

[3]     See, e.g., <u>McCormick v. Jackson</u>, No. 07 Civ. 7893
(JSR), 2008 WL 3891260 (S.D.N.Y. Aug. 21, 2008) (dismissing
complaint alleging that plaintiff's co-workers at U.S. Department
of Housing and Urban Development engaged in vast conspiracy to
create and disseminate non-consensual pornographic videos of her
using secret cameras), <u>aff'd mem. sub nom. McCormick v. Donovan</u>,
No. 08-5900-cv, 2010 WL 456686 (2d Cir. Feb. 11, 2010); <u>Bloom v.
United States Government</u>, No. 02 Civ. 2352 (DAB), 2003 WL
22327163 (S.D.N.Y. Oct. 10, 2003) (dismissing claims of
government conspiracy to "murder and lynch" plaintiff and
drugging him to keep him from pursuing practice of dentistry);
<u>Tyler v. Carter</u>, 151 F.R.D. 537, 537-38 (S.D.N.Y. 1993)
(dismissing complaint <u>sua sponte</u> where plaintiff, a self-
identified "cyborg," alleged that former Presidents Carter and
Clinton were part of conspiracy to reinstitute slavery and breed
humans for slaughter), <u>aff'd mem.</u>, 41 F.3d 1500 (2d Cir. 1994);
<u>George Washington America v. New York Passport Ctr.</u>, No. 91 Civ.
2731 (MJL), 1991 WL 258763, at *1 (S.D.N.Y. Nov. 27, 1991)
(dismissing complaint alleging U.S. government, CIA, and
communist conspirators used laser beams to weaken plaintiff's
ability to concentrate, bugged his phone, and interfered with his
sex life), <u>aff'd mem.</u>, 969 F.2d 1042 (2d Cir. 1992); <u>see
generally Fitzgerald v. First East Seventh Street Tenants Corp.</u>,
221 F.3d 362, 363 (2d Cir. 2000) (holding that district courts
have "inherent authority" to dismiss frivolous cases, whether
filed <u>in forma pauperis</u> or by fee-paying plaintiffs, and to do so
quickly "to preserve scarce judicial resources").

[4]     See, e.g., <u>Stitch v. United States Government</u>, 108 Fed.
App'x 32 (2d Cir. 2004) (affirming district court's <u>sua sponte</u>
dismissal of complaint alleging conspiracy involving government
officials and agencies that facilitated seizure of four airliners
on September 11, 2001); <u>Wood ex rel. United States v. Applied
Research Assocs., Inc.</u>, No. 07 Civ. 3314 (GBD), 2008 WL 2566728,
at **1, 3 (S.D.N.Y. June 26, 2008) (dismissing claims that World
Trade Center towers were not hit by hijacked airliners but were
"struck by high powered laser beams" fired by a "United States
military's laser-like weaponry"); <u>Haas v. Gutierrez</u>, No. 07 Civ.
3623 (GBD), 2008 WL 2566634, at **1, 6 (S.D.N.Y. June 26, 2008)
(dismissing as frivolous complaint alleging "existence of a
nefarious conspiracy of epic proportion" involving governmental

Gallop's claims are factually baseless -- indeed, because they are fanciful, fantastic, and delusional -- they are dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted, and the complaint is dismissed, with prejudice.  The Clerk of the Court shall enter judgment accordingly.

Dated:    New York, New York
          March 15, 2010


DENNY CHIN
United States District Judge

---

and non-governmental actors "to "further[] the false claim that
two wide-body jetliners hit the World Trade Center on 9/11/01"
when towers were actually destroyed by U.S. military).

**APPEARANCES**

For Plaintiff:

        DENNIS CUNNINGHAM, Esq.
        36 Plaza Street
        Brooklyn, NY  10211

        WILLIAM W. VEALE, Esq.
        2033 North Main Street, # 1060
        Walnut Creek, CA  94596

        MUSTAPHA NDANUSA, Esq.
        26 Court Street, # 603
        Brooklyn, NY  11201

For Defendants:

        PREET BHARARA, Esq.
        United States Attorney for the
          Southern District of New York
            By:  Heather McShain, Esq.
                Assistant United States Attorney
        86 Chambers Street
        New York, NY  10007